Nott, J.,
dissenting:
In the case of Harrison, (6 C. Cls. R., p. 327,) I dissented from the judgment of the court upon the following grounds:
“1. Aliens, non-resident, have no right to resort to the courts of a country, and they come in only by treaty or through inter-' national comity. It is a controlling principle that courts will not aid' a foreigner to accomplish that which the laws of the country forbid to its own citizens. These alien claimants are like smugglers: if they had acquired the fruit of their traffic, carried on in defiance of the municipal law and public policy of the United States, courts of the United States would not disturb them in their possession j conversely, if the forbidden traffic failed to reach a result, they cannot ask courts of the United States to collude with them in eluding the laws of the United States.
“ 2. The Government, in these abandoned or captured property cases, is a trustee. The fund sought to be recovered is the fruit of the trust, with all the profits and advantages derived through the action of the Government, and not the mere eight cents per pound that the claimants paid for their cotton. It would be contrary to the true intent of the statute to decree the Government a trustee as to a transaction springing out of a traffic with the armed enemies of the United States, carried on by illicit means, in defiance of their laws, in violation of their blockade, and against their declared public policy. If the world could *473 have anticipated tbe rule of law now insisted upon, there would have been no cotton owned -in the insurgent districts, and the United States would now be the trustees of the persons who most completely placed ways and means at the disposal of the rebellion.
“ 3. The claimants, knowing that the interests and declared policy of the United States alike required that their insurgent citizens should be cut off from commercial intercourse with the rest of mankind, voluntarily dealt with them, giving to persons engaged in the rebellion an available commercial credit in the manufacturing markets of the world. The act was aid and comfort to the rebellion, voluntary on the one hand, effective on the other.”
In addition to the facts established in that case, this one shows that the claimant voluntarily entered into a conspiracy for violating the lawful blockade which this Government had established over some of its own ports. During the rebellion a portion of the naval forces of the United States was engaged in carrying on hostilities against those persons who were in arms against the Government, and the remainder was engaged in keeping out of the southern ports those persons who were endeavoring to bring in material aid to the insurgents. I do not perceive the distinction which has been, drawn between the two classes of persons who thus resisted and engaged our naval forces. I am inclined to think that arms and ammunition sent into the insurrection ary districts from foreign ports were as effective aid and comfort to the rebellion as arms and ammunition manufactured on American soil; and I am not prepared to say that such aid and comfort was nothing because the persons who gave it were beyond the bounds of municipal law. It could not, I think, have been intended that, as a matter of legal right, the officers of the United States should carry on a trust, and the courts of the United States be required to enforce it, for the benefit of persons who.were endeavoring to defeat the efforts of the Government and prolong the war. The claim is not within the intent of the statute, and the claimant, if entitled to relief, should have sought it through his own government.
As to the want of evidence of the vessel having run the blockade, it is an error, I think, to confound the act which was done with the mere intent of an ordinary criminal to commit a crime. It is not necessary that a vessel actually violate a *474 blockade; the attempt is sufficient ground for condemnation. Here the party colluded with blockade-runners, and did all that he could to aid them in carrying out their design. The question of their success or failure is secondary, and does not change the character of his act. It has always been deemed aid and comfort to the rebellion for a citizen in Charleston or Wilmington to engage in enterprises for violating the blockade. I am unable to perceive why one rule should be applied to the consignor and another to the consignee.